■ CHRISTINE ROCA, Respondent, v ALLEN BRIAN PEREL et al., Appellants. [859 NYS2d 203]—

In an action, inter alia, to recover damages for medical mal-

practice, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Steinhardt, J.), dated January 3, 2007, as denied their cross motion for summary judgment dismissing the complaint, and denied those branches of their separate cross motion which were pursuant to CPLR 3211 (a) (5) to dismiss so much of the complaint as sought to recover damages based on alleged acts of medical malpractice occurring prior to April 22, 2002, or alternatively, prior to May 17, 2000, as time-barred, and pursuant to CPLR 3124 to compel the plaintiff to provide authorizations for all of her mental health records.

Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the defendants' cross motion which was pursuant to CPLR 3124 to compel the plaintiff to provide authorizations for all of her mental health records, and substituting therefor a provision granting that branch of the cross motion to the extent of directing the plaintiff to provide authorizations for her mental health records, if any, from and after May 26, 1993, and otherwise denying that branch of the cross motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the time for the plaintiff to provide the subject authorizations, if any, shall be within 30 days of service upon the plaintiff of a copy of this decision and order.

From May 26, 1998, until January 2004, the defendant Dr. Allan Brian Perel treated the plaintiff based upon a diagnosis of multiple sclerosis. Magnetic resonance imaging (hereinafter MRIs) taken over the years revealed a lesion on the plaintiff's brain, which grew over time. As a result of an MRI performed on January 8, 2004, the plaintiff was diagnosed as having a hemangioblastoma on her brain, and had to undergo a craniotomy for it to be removed. It is now undisputed that, in fact, she did not have multiple sclerosis.

The plaintiff brought this action against Dr. Perel and his professional corporation, Alpha Neurology, P.C., alleging medical malpractice, among other things, in misdiagnosing her as suffering from multiple sclerosis and in failing to diagnose and treat her brain tumor.

"The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury" (*DiMitri v Monsouri*, 302 AD2d 420, 421 [2003]; *see Feinberg v Feit*, 23 AD3d 517, 518-519 [2005]; *Holbrook v United Hosp. Med. Ctr.*, 248 AD2d 358, 359 [1998]). Thus, "[o]n a motion for summary judgment dismissing the complaint in a medical mal-

practice action, the defendant doctor has the initial burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (*Chance v Felder*, 33 AD3d 645, 645 [2006] [internal quotation marks and citations omitted]; *see Hernandez-Vega v Zwanger-Pesiri Radiology Group*, 39 AD3d 710, 711 [2007]).

"Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions . . . Such credibility issues can only be resolved by a jury" (*Feinberg v Feit*, 23 AD3d at 519 [citations omitted]; *see Graham v Mitchell*, 37 AD3d 408 [2007]).

The defendants met their initial burden of demonstrating their entitlement to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]) by submitting an expert's affirmation establishing that Perel did not deviate from accepted standards of medical practice and that, in any event, any alleged acts or omissions were not the proximate cause of the plaintiff's damages, as she would have required the same treatment and surgery even if the hemangioblastoma had been diagnosed earlier.

In opposition to the motion, the plaintiff referred to the affirmation of her expert, which refuted the assertions of the defendants' expert, opining that "[t]he non-diagnosis of the brain tumor by Dr. Perel was a departure from good and accepted standards of medical practice and was a proximate cause of the patient's injuries." Contrary to the defendants' contention, the foregoing opinion was neither speculative nor conclusory, but relied on specifically cited evidence in the record. This was sufficient to raise a question of fact precluding the granting of summary judgment (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Graham v Mitchell*, 37 AD3d 408 [2007]; *Feinberg v Feit*, 23 AD3d at 519). Accordingly, the Supreme Court correctly denied the defendants' cross motion for summary judgment dismissing the complaint.

The Supreme Court also denied that branch of the defendants' separate cross motion which was pursuant to CPLR 3211 (a) (5) to dismiss so much of the complaint as sought to recover damages based on alleged acts of medical malpractice occurring prior to April 22, 2002, or alternatively, prior to May 17, 2000, as time-barred. The Supreme Court was correct in doing so, since all of the allegations of medical malpractice in the plaintiff's complaint were timely interposed, as the plaintiff was continuously treated by defendant Perel for the same condition giving rise to this action, from and after May 26, 1998.

Pursuant to CPLR 214-a, "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the 'accrual' comes only at the end of the treatment" (*Borgia v City of New York,* 12 NY2d 151, 155 [1962]; *see Young v New York City Health & Hosps. Corp.,* 91 NY2d 291, 296 [1998]; *Allende v New York City Health & Hosps. Corp.,* 90 NY2d 333, 338 [1997]; *McDermott v Torre,* 56 NY2d 399, 405-406 [1982]). To satisfy the first element, that the treatment be continuous, "further treatment must be explicitly anticipated by both the physician and patient, as demonstrated by a regularly-scheduled appointment for the near future, which was agreed upon at the last visit and conforms to the periodic appointments relating to the treatment in the immediate past" (*Monello v Sottile, Megna,* 281 AD2d 463, 464 [2001]; *see Young v New York City Health & Hosps. Corp.,* 91 NY2d at 296; *McDermott v Torre,* 56 NY2d at 405; *McInnis v Block,* 268 AD2d 509 [2000]). To satisfy the second element, the course of treatment must have been "established with respect to the condition that [gave] rise to the lawsuit" (*Nykorchuck v Henriques,* 78 NY2d 255, 259 [1991]; *see Young v New York City Health & Hosps. Corp.,* 91 NY2d at 295).

Both elements are satisfied here. First, contrary to the defendants' contention, the two occasions when the plaintiff waited longer between visits than the two to three months the doctor had advised did not, by themselves, evidence "an intent not to return to defendant[s]" or an interruption in her "reliance upon the defendant[s'] observation and directions for overseeing her progress" (*Sposato v Di Giacinto,* 247 AD2d 267 [1998]). Under the circumstances here, in contrast to those in *Sposato,* applying the continuous treatment doctrine furthers "the policy underlying the . . . doctrine, i.e., that a patient should not be required to interrupt corrective medical treatment by a physician and undermine the trust in the physician-patient relationship in order to ensure a timely claim" (*Couch v County of Suffolk,* 296 AD2d 194, 197 [2002]).

Second, the plaintiff demonstrated that the course of treatment was "established with respect to the condition that [gave] rise to the lawsuit" (*Nykorchuck v Henriques,* 78 NY2d 255, 259 [1991]; *see Pace v Caron,* 232 AD2d 617 [1996]).

Finally, the Supreme Court erred in denying that branch of the defendants' cross motion which was pursuant to CPLR 3124 to direct the plaintiff to provide authorizations for all of her mental health records. In her bill of particulars, the plaintiff alleged several psychic injuries, and has placed her mental condi-

tion "in controversy," and for purposes of this litigation, waived the privilege of CPLR 4504 (CPLR 3121 [a]; *see Dillenbeck v Hess,* 73 NY2d 278 [1989]; *Starling v Warshowski,* 148 AD2d 441, 442 [1989]). Under these circumstances, that branch of the defendants' cross motion which was pursuant to CPLR 3124 to compel the plaintiff to provide authorizations for all of her mental health records should have been granted to the extent of directing the plaintiff to provide authorizations for her mental health records, if any, from and after May 26, 1993, a point five years prior to the date she started treatment with the defendants, which is a reasonable period of time. Prudenti, P.J., Fisher, Miller and Balkin, JJ., concur.